IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ABIR ALI,
      Plaintiff,

v.                                   Civil No. 3:24cv73 (DJN)

ESKER LEE TATUM, *et al.*,
      Defendants.

## MEMORANDUM OPINION

Plaintiff, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action. This matter comes before the Court for evaluation of Plaintiff's Second Particularized Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. For the reasons stated below, the Second Particularized Complaint (ECF No. 28) and the action will be DISMISSED.[1]

## I.      PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines that the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

---

[1]    The Court employs the pagination assigned by CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Plaintiff's submissions.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). To survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her

2

claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing

*Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d

270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon*

*v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua*

*sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the

face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J.,

concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.    THE COURT'S PRIOR MEMORANDUM ORDERS AND THE SECOND PARTICULARIZED COMPLAINT

By Memorandum Order entered on June 12, 2024, the Court directed Plaintiff to

particularize his complaint, because his complaint failed to provide Defendants with fair notice

of the law and facts upon which his or her liability rests. (ECF No. 19.)  Plaintiff filed his First

Particularized Complaint on July 15, 2024.  (ECF No. 21.)

Nevertheless, the First Particularized Complaint was still woefully deficient.  By

Memorandum Order September 13, 2024, the Court stated:

> On July 15, 2024, Plaintiff submitted his Particularized Complaint, wherein
> he alleges he was assaulted by two other inmates. (ECF No. 21.) In his
> Particularized Complaint, Plaintiff lists four defendants.  (*Id.* at 13.)  Plaintiff,
> however, fails to articulate why the four defendants are liable to him under the
> Eighth Amendment for that assault.  In order to do so, **Plaintiff must allege facts
> that indicate that a particular defendant actually knew of and disregarded a
> substantial risk of serious harm to his or her person**.  *See Farmer v. Brennan*,
> 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard — a
> showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692,695
> (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).
>
> Accordingly, Plaintiff is DIRECTED, within thirty (30) days of the date of
> entry hereof, to particularize his complaint in conformance with the following
> directions and in the order set forth below:
>
> a.    At the very top of the particularized pleading,
> Plaintiff is directed to place the following caption in all capital
> letters: "SECOND PARTICULARIZED COMPLAINT FOR
> CIVIL ACTION NUMBER 3:24CV73."

> b. The first paragraph of the particularized pleading must contain a list of defendants. Thereafter, in the body of the particularized complaint, Plaintiff must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving rise to his claims for relief. Thereafter, in separately captioned sections, Plaintiff must clearly identify each civil right violated. Under each section, the Plaintiff must list each defendant purportedly liable under that legal theory and explain why he believes each defendant is liable to him. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized complaint that support that assertion. Plaintiff shall also include a prayer for relief.
>
> c. The particularized pleading will supplant the prior complaints. The particularized pleading must stand or fall of its own accord. Plaintiff may not reference statements in the prior complaints.

(ECF No. 26, at 2–3 (emphasis added).)

On October 7, 2024, Plaintiff filed his Second Particularized Complaint. Nevertheless, Plaintiff failed to correct the deficiencies described above and allege facts that indicate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. In the Second Particularized Complaint, Plaintiff names as defendants: Esker Lee Tatum, the Warden; "John Doe – the Officer in charge"; and "John Doe – The Supervisor of the Officer." (ECF No. 28, at 1.) Thereafter, Plaintiff states:

> The Thirty Building is designed to have three pods, 31, 32, & 33. In order to go inside each pod, the correctional officer has to open the sliding door, which keeps each pod secure & the inmates in that particular pod. During the day shift, officer has a help so two officers when they start day shift at 6 a.m. do a count procedure. They both make sure that all the inmates are in their assign cell, building & pod. Then there is one officer [who] go[es] to the booth/command center which is located in the middle of each building on the second floor to give a panoramic view for all three pods and there are TV screen[s] which has the view of the video camera, so the officer who's in the booth has eyes on every inch of every pod. And the officer let everyone out of their cells by unlocking the cell doors. When there's breakfast time, inmates go to the diner hall & the booth officer open one pod at a time and there is always another officer on the floor to make sure all the inmates are going straight to diner hall and nowhere else. When one pod's slider door is open then all the other pods' slider doors are closed. Every correctional center have control movement. That's why Department of Corrections has disciplinary process.

4

The correctional officer starts his/her shift at 6 a.m. until 1800 p.m.! Every officer does work for 12 hours a shift! A-Break comes to work for three days then B-Break takes over for three days. Then A-Break again then B-Break. This is how they alternate and each officer is assign to a specific area. If an officer is assigned to 30 Building then that officer does not work anywhere else.

And the Plaintiff was a worker/houseman. And the Plaintiff is a foreigner. He sticks out like a sore thumb. All the officers recognize the Plaintiff & his cell mate, what building he's located at, even to what cell the Plaintiff belongs to. That's what all the correctional officers get paid for. To be in everyone's matter. And that's why VADOC has an offense code
# 239a - being in an unauthorized area
# 229b – leaving area of confinement without permission.
See exhibit #1- Operating Procedure 861.1 attachment 3

So in order for two inmates from another pod not from 30-33 pod come inside 30-33 pod and come to cell 30-33-120, the officer who's in charge/the booth officer has to open 30-33 front slider door & has to unlock 30-33-120 cell door. The pain that those two inmates caused can not be done without the help of the officer who was in charge. The officer who was in charge was responsible for my life & well being. That's why the officers take an oath to serve & protect. That officer did not protect me. And the Sgt. who [was] suppose to be on the floor did not stop those two inmates from being in an unauthorized area. And the Sgt. is the supervisor of the officer who was in charge, allowed the officer to open the slider door of 30-33 pod & unlock 30-33-120 cell. Every correctional officer carry a radio with which they communicate with each other, could easily tell officer in charge to keep the slider door of 30-33 close. Those two inmates have to/had to pass the Sgt. to enter 30-33 pod.

Negligence is defined as the failure to use such care as a reasonably prudent and careful person would use under similar circumstances. Negligence claims can be pursued when an assault occurs by other prisoners.

(*Id.* at 4–6.)

Plaintiff contends that Defendants violated his rights under the Eighth Amendment and by negligently allowing him to be assaulted. (*Id.* at 1, 6.)

### III.    ANALYSIS

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). Nevertheless, not every harm caused by another inmate translates into constitutional liability for the corrections

5

officers responsible for the prisoner's safety. *See id.* at 834. The Supreme Court has emphasized that it is *conscious* disregard for intolerable risks that provides the touchstone of the deliberate indifference standard for Eighth Amendment claims:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. Thus, *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837); *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)).

In *Farmer*, the Supreme Court did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." 511 U.S. at 834 n.3. However, it is understood that "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004). Thus, "[a]ny time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates." *Westmoreland v. Brown*, 883 F. Supp. 67, 74 (E.D. Va. 1995). Therefore, a baseline risk of assault inherent to prison life cannot support an Eighth Amendment claim. *See Grieveson v. Anderson*, 538 F.3d 763, 776–77 (7th Cir. 2008).

This matter turns on whether Plaintiff has alleged facts that indicate any of the three defendants knew of a substantial risk of harm to Plaintiff and acted with deliberate indifference to that risk. Courts have found prison officials to be actually aware of a sufficiently substantial risk of assault "where custodians know of threats to specific prisoners posed by a specific source,

or place prisoners in the same cell as an inmate known to have violent propensities." *Whaley v. Erickson*, 339 F. App'x 619, 622 (7th Cir. 2009) (citing *Brown v. Budz*, 398 F.3d 904, 914–15 (7th Cir. 2005)). Plaintiff alleges no such facts here.

Nevertheless, the Supreme Court has cautioned that:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

*Farmer*, 511 U.S. at 842–43 (citation omitted). The Supreme Court further cautioned that "a prison official [may not] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843. "On the other hand, as the vagueness of a threat increases, the likelihood of actual knowledge of impending harm decreases. So, too, does the official's ability to respond." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (internal citation and quotation marks omitted).

Plaintiff has not plausibly alleged any facts indicating that inmates at his place of incarceration faced any significant risk of assault by other prisoners. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (observing that "[i]n order to infer callous indifference when an official fails to protect a prisoner from the risk of attack, there must be a strong likelihood rather than a mere possibility that violence will occur"); *Westmoreland*, 883 F. Supp. at 76 ("The fact that there were as many as 2.5 reported assaults per day in January does not permit a conclusion that each of the more than 1300 inmates was subjected to constitutionally prohibited substantial

7

risk of harm solely by virtue of his incarceration in the City Jail."). Instead, Plaintiff has simply

alleged that he was suddenly assaulted by two inmates when a correctional officer negligently

allowed them into his living area. Such facts, without more, are insufficient to support an Eighth

Amendment claim. Accordingly, Plaintiff's Eighth Amendment claim will be DISMISSED.

Plaintiff's state law claims will be DISMISSED WITHOUT PREJUDICE.[2]

      Plaintiff's action will be DISMISSED for failure to state a claim. The Clerk will be

DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

      An appropriate Final Order will accompany this Memorandum Opinion.

      Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to

Plaintiff.

                           /s/

                       David J. Novak
                       United States District Judge

Richmond, Virginia
Dated: March 24, 2025

---

[2]    Generally, pendant state law claims should be dismissed if the federal claims are dismissed before trial. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). In light of the preliminary dismissal of the federal claim, the Court declines to exercise its discretion to retain the state tort claim. *See Jenkins v. Weatherholtz*, 909 F.2d 105, 110 (4th Cir. 1990).